629 A.2d 1055

The HOSPITAL ASSOCIATION OF PENNSYLVANIA, INC., Petitioner,

v.

Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania and The Pennsylvania Insurance Department, Respondents.

Commonwealth Court of Pennsylvania.

Argued May 12, 1993.

Decided July 29, 1993.

364

Elizabeth A. Read, for petitioner.

Gregory P. Miller, for respondents.

Before CRAIG, P.J., and DOYLE, COLINS, PALLADINO, SMITH, PELLEGRINI and KELLEY, JJ.

PALLADINO, Judge.

Presently before this court is a motion for summary judgment filed by Constance B. Foster, the Insurance Commissioner of the Commonwealth of Pennsylvania (Commissioner)[1]. For the reasons which follow, we grant summary judgment.

On January 22, 1992, the Hospital Association of Pennsylvania, Inc. (Association) filed a petition for review in our original jurisdiction[2] challenging the validity of portions of Section 1797 of the Motor Vehicle Financial Responsibility Law (Law)[3] and its implementing regulations. The petition for review contains four counts, all seeking declaratory and injunctive relief.

In Count I, the Association asserts that the Commissioner exceeded her statutory authority in promulgating Section 69.-43(b) of Regulation 11–91, 31 Pa.Code § 69.43(b), and seeks an injunction preventing the enforcement of the regulation.

Count II of the petition states that the definition of "usual and customary charge" found in Section 69.3 of Regulation 11–91, 31 Pa.Code § 69.3 is contrary to the Law and renders

1. Cynthia M. Maleski has since succeeded Ms. Foster and is currently the Acting Insurance Commissioner of the Commonwealth of Pennsylvania.

2. Section 761(a) of the Judicial Code, 42 Pa.C.S. § 761(a).

3. 75 Pa.C.S. § 1797.

section 1797(a) unconstitutional. Further, the Association seeks an injunction preventing the use of the definition.

In Count III of the petition, the Association asserts that the peer review provisions found in section 1797(b) of the Law are constitutionally defective and not cured by the final regulations promulgated by the Commissioner. The Association claims that the provisions deprive physicians and patients of due process and permit an unconstitutional impairment of contract. Therefore, the Association seeks an injunction preventing enforcement of section 1797(b).

Finally, in Count IV of the petition, the Association seeks a declaration that the lawful portions of the regulations implementing section 1797(a) of the Law must be deemed effective retroactively as of April 15, 1990, the date section 1797(a) took effect. Alternatively, the Association seeks a declaration that section 1797(a) of the Law was unconstitutional prior to the effective date of the regulations, December 2, 1991.

The Commissioner filed preliminary objections to the Association's petition for review, arguing that the Association had failed to exhaust its administrative remedies and failed to join indispensable parties. Further, the Commissioner demurrered to Counts I and IV of the petition, and moved for a more specific pleading with respect to the challenge to the peer review organizations. By a published opinion and order of October 27, 1992, the commonwealth court granted the Commissioner's motion for more specific pleading, and denied all other preliminary objections. *Hospital Association of Pennsylvania v. Foster,* 151 Pa.Commonwealth Ct. 308, 616 A.2d 1082 (1992).

On August 11, 1992, the Association filed an amended petition for review, pleading with more specificity the Association's challenge to the peer review organizations established by section 1797(b) of the Law. Thereafter, the Commissioner filed an answer and new matter to the amended petition, and the Association responded. Therefore, the pleadings are

closed.[4]

█ On February 5, 1993, the Commissioner filed a motion for summary judgment. Summary judgment is properly granted where pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b); *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991). Summary judgment is appropriate in an action such as this where the parties are seeking declaratory and injunctive relief. *Pennsylvania Medical Providers Association v. Foster,* 149 Pa.Commonwealth Ct. 203, 613 A.2d 51 (1992).

The issues presented for our review are (1) whether the Commissioner's interpretation of section 1797(a) as set forth in section 69.43(b) of the final regulations is clearly erroneous; (2) whether the Commissioner clearly abused her discretion in promulgating section 69.3 of the final regulations which sets forth the definition of the phrase "usual and customary charge"; (3) whether the peer review organization provisions of Act 6 are unconstitutional; and (4) whether the unchallenged portions of the final regulations should be applied retroactively.

With respect to the first issue, the Association claims that in promulgating section 69.43(b), the Commissioner exceeded her statutory authority, ignored the specific language of section 1797(a) and ignored the intent of the legislature. The Commissioner contends that contrary to the Association's asser-

4. The Association asserts that although the pleadings are closed, discovery is not complete and, therefore, the Commissioner's motion for summary judgment is premature. Accordingly, the Association filed an application for an order dismissing the Commissioner's motion for summary judgment without prejudice, or in the alternative, staying disposition of the summary judgment motion until discovery has been completed. The application was argued to this court concurrently with the Commissioner's motion for summary judgment. Because we conclude that there are no genuine issues of material fact in dispute and, that further discovery notwithstanding, the Commissioner is entitled to judgment as a matter of law, the Association's application for an order to dismiss is denied.

tions, her interpretation of the statute as set forth in section 69.43(b) of the regulations is wholly consistent with the intent of the legislature and, therefore, she is entitled to judgment as a matter of law.

Section 1797(a) provides in pertinent part as follows:

(a) General Rule.—A person or institution providing treatment, accommodations, products or services to an injured person ... shall not require, request or accept payment for treatment, accommodations, products or services in excess of 110% of the prevailing charge at the 75th percentile; 110% of the applicable fee schedule, the recommended fee or the inflation index charge; or 110% of the diagnostic-related groups (DRG) payment; whichever pertains to the specialty service involved, determined to be applicable in this Commonwealth under the Medicare program for comparable services at the time the services were rendered, or the provider's usual and customary charge, whichever is less. The General Assembly finds that reimbursement allowances applicable in the Commonwealth under the Medicare program are an appropriate basis to calculate payment for treatments, accommodations, products and services for injuries covered by liability or uninsured and underinsured benefits or first party medical benefits insurance.... If a prevailing charge, fee schedule, recommended fee, inflation index charge or DRG payment has not been calculated under the Medicare program for a particular treatment, accommodation, product or service, the amount of the payment may not exceed 80% of the provider's usual and customary charge.

75 Pa.C.S. § 1797(a).

■ The Commissioner has interpreted section 1797(a) as if, in enacting the medical cost containment provisions of the Law, the General Assembly incorporated, as a whole, the payment allowances under Medicare.[5] *Pennsylvania Association of Rehabilitation Facilities v. Foster,* 154 Pa.Commonwealth Ct. 555, 624 A.2d 270 (1993). This interpretation leads

5. 42 U.S.C. §§ 1395–1395ccc.

to the result that, regardless of the payment methodology used by Medicare, if Medicare makes any payment for a particular service, then reimbursement for purposes of automobile insurance will be limited to 110% of that amount. *Id.*

In order to effectuate the Commissioner's interpretation of section 1797(a), the Commissioner promulgated section 69.-43(b) which provides in pertinent part as follows:

If a Medicare fee schedule exists for out-patient, rehabilitation and physician services, insurers shall pay Part A and B providers at 110%. If the Medicare reimbursement allowance is the Medicare aggregate payment, in areas such as out-patient services, rehabilitation services, and home health care services, payment shall be 110% of the actual cost based upon the cost-to-charge ratios for each ancillary, out-patient, or other reimbursable cost center utilized by the insured.... Payment for in-patient rehabilitation services shall consist of the routine cost per diem (room and board) plus the actual cost based upon the cost-to-charge ratio of each ancillary cost center service times 110%. Payment for out-patient rehabilitation services shall be the actual cost based upon the cost-to-charge ratio for each ancillary cost center service times 110%. The costs used to develop these payments shall be based on the latest audited Medicare cost report for that facility.

31 Pa.Code § 69.43(b).

This court has previously held that the Commissioner's interpretation of section 1797(a) is not clearly erroneous and will not be disturbed. *Pennsylvania Medical Society v. Foster*, 154 Pa.Commonwealth Ct. 555, 624 A.2d 274; *Pennsylvania Association of Rehabilitation Facilities.* Furthermore, we have recently held that section 69.43(b) is consistent with the Commissioner's interpretation of section 1797 of the Law. *Pennsylvania Association of Rehabilitation Facilities.* Therefore, we conclude that the Commissioner's interpretation of section 1797(a), as set forth in section 69.43(b) of the final regulations, is not clearly erroneous. Accordingly, count I of the Commissioner's motion for summary judgment is granted.

■ The second issue presented concerns the Commissioner's definition of the phrase "usual and customary charge" as set forth in section 69.3 of the final regulations. The definition provides as follows:

Usual and customary charge—The charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided.

31 Pa.Code § 69.3.

The Association contends that the definition established in section 69.3 is inconsistent with the Law and an attempt by the Commissioner to redraft the legislation in a manner that directly conflicts with the meaning of the legislature's language and the common usage of terms under the Medicare Program. Specifically, the Association claims that the phrase, "the provider's usual and customary charge" found in section 1797, refers to a particular charge made by a particular provider, not an aggregate or average of multiple providers' charges.

The Commissioner contends that she did not clearly abuse her discretion in promulgating the regulation because the definition of "usual and customary" set forth in section 69.3 is consistent with the statutory language of the Law. Therefore, the Commissioner asserts that she is entitled to summary judgment.

■ Our standard of review of the Commissioner's regulation is quite limited. Generally, regulations promulgated by an agency are accorded a presumption of validity and reasonableness. *Kalodner v. Commonwealth of Pennsylvania*, 150 Pa.Commonwealth Ct. 248, 615 A.2d 900 (1992). A court will not substitute its judgment for that of the agency unless a clear abuse of discretion is shown. *Brocal Corporation v. Department of Transportation*, 515 Pa. 224, 528 A.2d 114 (1987).

We agree with the Association that section 1797 refers to a single provider seeking reimbursement. However, we dis-

agree with the Association's contention that term "usual and customary charge" can only be interpreted as being a particular charge made by a particular provider.

As drafted by the Commissioner, section 69.3 of the regulations establishes the reimbursement level for the single provider based on an aggregate of charges for several similarly situated providers. Because we conclude that the Commissioner's interpretation of section 1797 as set forth in section 69.3 of the final regulations is not clearly erroneous, count II of the Commissioner's motion for summary judgment is granted.

■ The third issue presented concerns the constitutional validity of the peer review organization (PRO) provisions of the Law. Section 1797(b) [6] of the Law requires insurers to contract with a PRO for the purpose of confirming that treatment, products, services or accommodations provided to patients injured in automobile accidents conform to the professional standards of performance and are medically necessary.

With regard to this issue, the Association argues that neither the Law nor the final regulations promulgated by the Commissioner define or describe the terms "professional standards of performance" or "medically necessary" and that due to the lack of standards and criteria, the approximately 100 PROs that exist have made and will continue to make inconsistent and subjective determinations. Therefore, the Association asserts that the Law is unconstitutionally vague and that such vagueness has not been cured by the regulations. The

**6.** Section 1797(b) provides in pertinent part as follows:

(b) Peer review plan for challenges to reasonableness and necessity of treatment.—

(1) Peer review plan.—Insurers shall contract jointly or separately with any peer review organization established for the purpose of evaluating treatment, health care services, products or accommodations provided to any injured person. Such evaluation shall be for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary. An insurer's challenge to a PRO within 90 days of the insurer's receipt of the provider's bill for treatment or services or may be made at any time for continuing treatment or services.

Commissioner contends, however, that the Association's challenge was previously rejected by this court in *Pennsylvania Medical Providers Association v. Foster,* 149 Pa.Commonwealth Ct. 203, 613 A.2d 51 (1992). Therefore, the Commissioner asserts that she is entitled to judgment as a matter of law. We agree.

In *PMPA,* this court specifically concluded that the terms "conform to the professional standards of performance" and "medically necessary" refer to the standards set forth in the federal statute establishing peer review of Medicare services. Accordingly, we held that the terms were not unconstitutionally vague. Pursuant to our decision in *PMPA,* we reject the Association's vagueness challenge to section 1797(b).

Next, the Association asserts that the peer review organization system is actually and inherently biased in favor of the insurance companies because it requires insurers to refer medical claims to PROs which the Association claims have a direct, pecuniary interest in making determinations in favor of the insurance company. This issue was also resolved by this court in *PMPA.*

In *PMPA,* we concluded that the regulations, which establish a provider's right to appeal from a final determination of a PRO and a provider's right to submit a complaint to the Insurance Department regarding an insurer's decision, resolved the petitioner's due process concerns regarding bias. Because we continue to adhere to our position that the PRO provisions of the Law are not constitutionally invalid, count III of the Commissioner's motion for summary judgment is granted.

■ The fourth and final issue presented by the Association is whether the regulations promulgated by the Commissioner should be applied retroactively as of April 15, 1990, the effective date of the cost containment provisions of the Law. The Association contends that retroactive application is required because the regulations clarify statutory provisions which were vague and ambiguous. The Commissioner contends, however, that retroactivity is not favored in the law

and, therefore, she is entitled to summary judgment on count IV of her motion.

Section 69.2 of the final regulations provides:

This chapter applies to medical payments made by insurers under automobile insurance policies issued under the MVFRL. This chapter applies to insurer payments to providers for services rendered on and after November 30, 1991.

31 Pa.Code § 69.2.

Thus, the Commissioner, in promulgating a regulation in accordance with her statutory authority, determined that the regulations should be applied prospectively, not retroactively to the effective date of the cost containment provisions of the Law.

█ As previously noted, our review of the Commissioner's regulations is limited. This court will not substitute its judgment for that of the Commissioner unless a clear abuse of discretion is shown. *Brocal.* A regulation promulgated by an administrative agency shall not be construed to have a retroactive effect unless it was clearly and manifestly intended to be so applied. *Pennsylvania State Education Association v. Commonwealth of Pennsylvania, Department of Public Welfare,* 68 Pa.Commonwealth Ct. 279, 449 A.2d 89 (1982).

The decision made by the Commissioner to apply the regulations prospectively is not contrary to the language of the Law. Moreover, it is clear that the Commissioner did not exceed her statutory authority in promulgating such a regulation. Therefore, we will not substitute our judgment for that of the Commissioner on this issue. Accordingly, count IV of the Commissioner's motion for summary judgment is granted.

Because we found in favor of the Commissioner with respect to the four issues presented, the motion for summary judgment filed by the Commissioner is granted.

374

## ORDER

AND NOW, July 29, 1993, the Application for an Order to Dismiss the Motion for Summary Judgment of the Insurance Commissioner of the Commonwealth of Pennsylvania is hereby denied.

Pursuant to Pa.R.C.P. No. 1035, the motion of the Insurance Commissioner of the Commonwealth of Pennsylvania for summary judgment is hereby granted. The amended petition for review of the Hospital Association of Pennsylvania is dismissed with prejudice.