v.

**PENNSYLVANIA STATE ETHICS
COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 4, 1997.

Decided July 3, 1997.

Philip B. Friedman, Erie, for petitioner.

John J. Contino, Harrisburg, for respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and FLAHERTY, JJ.

PELLEGRINI, Judge.

Before this court is a motion by the Pennsylvania State Ethics Commission (Ethics Commission) for summary judgment to a petition for review filed by P.J.S. in our original jurisdiction. P.J.S.'s petition requests an injunction prohibiting further action against him by the Ethics Commission and a declaration that the Ethics Commission does not have jurisdiction for any action against him, and that such action would violate his constitutional rights. In *P.J.S. v. Pennsylvania State Ethics Commission,* 669 A.2d 1105 (Pa. Cmwlth.1996) (*P.J.S.I*), we overruled the Ethics Commission's preliminary objections to the petition. As a result, the Ethics Commission filed an answer to the petition and discovery proceeded, including several depositions. Based on facts established by the depositions, the Ethics Commission then filed this motion for summary judgment.

P.J.S., an attorney licensed by the Supreme Court of Pennsylvania, was hired in January of 1990 as a full-time solicitor for the City of Erie.[1] The City agreed that P.J.S. could maintain an outside law practice with his firm while serving as solicitor. He was placed on the City payroll and was paid a salary and received the same benefits as other employees of the City. While he was permitted to work flexible hours, he was considered and expected to be a full-time employee by the mayor of the City, to whom he reported.

In 1993, the Estate of David Johnson filed suit against the City, the mayor and the chief of police. The City's insurer, which was obligated to defend the City in the suit, requested that P.J.S. and his law firm represent the City. While continuing to serve as solicitor, P.J.S. agreed to represent the City's insurer in the suit against the City.[2] The Ethics Commission received a complaint based on this agreement and alleging other ethics violations by P.J.S., and it began an investigation. In response,[3] P.J.S. filed this petition for review in an effort to prevent the investigation and any action against him by the Ethics Commission.

Since this petition was filed, the Ethics Commission finished its investigation and issued a Findings Report maintaining that because he was the City's solicitor, P.J.S.'s representation of the City through his law firm violated Section 3(a) and (f) of the Ethics Act, 65 P.S. § 403(a) and (f).[4] Although the case is ready to proceed to the Ethics Commission, which would conduct a full evidentiary hearing, the Ethics Commission has stayed its proceedings pending a decision of this court.

The conflict of interest provisions contained in Section 3 of the Ethics Act, 65 P.S. § 403, provide in pertinent part:

(a) No public official or public employee shall engage in conduct that constitutes a conflict of interest.

. . .

(f) No public official or public employee . . . shall enter into any contract valued at $500 or more with the governmental body with which the public official or public

---

1. The work week for full-time employees of the City was considered 35 hours.

2. P.J.S. obtained the mayor's permission to defend the City in addition to his work as solicitor. P.J.S. also asserted at oral argument that he obtained an outside legal opinion that he was permitted to undertake the City's case through his private law practice prior to his acceptance. Although not a material issue here, depending on the source and circumstances of the alleged opinion, that issue may be raised before the Commission as a bar to criminal penalties and treble damages. *See* Section 9(g) of the State Ethics

Act (Ethics Act), Act of October 4, 1978, P.L. 883, *as reenacted and amended* by the Act of June 26, 1989, P.L. 6, 65 P.S. § 409(g).

3. Additional procedural history, which is irrelevant to this decision, was outlined in *P.J.S. I.*

4. The Ethics Commission also alleged that P.J.S. had used city equipment, staff and materials in pursuing his outside work. Counsel for P.J.S. indicated at oral argument that this charge may proceed before the Ethics Commission regardless of the outcome of this case.

employee is associated or any subcontract valued at $500 or more with any person who has been awarded a contract with the governmental body with which the public official or public employee is associated, unless the contract has been awarded through an open and public process ...

■ The Ethics Commission contends that it is entitled to summary judgment because the facts established through the pleadings and depositions are that P.J.S. was a full-time, salaried employee of the City and, as such, he was, as a matter of law, a public employee subject to the conflict of interest provisions of the Ethics Act. P.J.S. challenges the motion for summary judgment by asserting that material issues of fact exist and by arguing that the legislature did not intend that a solicitor, who maintains a private practice, be a public official subject to the conflict of interest provisions.[5]

■ The first issue of material fact asserted by P.J.S. is that although he provided legal services to the City from January 1990 through April 1994, he was never duly appointed as solicitor because City Council never ratified his appointment pursuant to the applicable City ordinance. While this may be true, we have found no law nor is any cited to establish that an individual acting as solicitor, albeit without all the procedural aspects of his appointment completed, is not subject to the rules which may apply to solicitors duly appointed. Therefore, this assertion is not a material fact which would prevent the entry of summary judgment.

■ P.J.S. also raises several points of fact on which the parties disagree, such as whether he actually continued in private practice (Ethics Commission Answer and New Matter ¶ 47), and whether he used his private law office, equipment, books and supplies in performing legal services for the City (Ethics Commission Answer and New Matter

¶ 43 and P.J.S. Reply to New matter ¶ 43). Although the parties do not agree as to these facts, they are not material issues that would affect our determination of whether or not summary judgment should be granted.

Because there are no genuine issues of material fact, the issue is whether the Ethics Commission is entitled to judgment as a matter of law because it has jurisdiction for purposes of allegations of a conflict of interest over solicitors such as P.J.S. who maintain a private law practice. P.J.S. asserts that the Ethics Commission was not clearly given any jurisdiction over solicitors except for Section 4 of the Ethics Act, 65 P.S. § 404, which requires full-time and part-time solicitors to file annual financial interest statements.

Prior to the 1989 amendments, Section 4 of the Ethics Act required financial disclosure forms be filed by all public officials and public employees of the Commonwealth, Commonwealth agencies and political subdivisions, for example:

Any other public employee or public official shall file a statement of financial interests with the governing authority of the political subdivision by which he is employed or within which he is appointed or elected no later than May 1 of each year that he holds such a position and of the year after he leaves such a position.

65 P.S. § 404(a). By their unambiguous terms, both Section 3 and Section 4 of the Ethics Act apply to a "public official" or a "public employee", as defined in Section 2 of the Ethics Act, 65 P.S. § 402:

"Public employee." Any individual employed by the Commonwealth or a political subdivision who is responsible for taking or recommending official action of a nonministerial nature with regard to ... any other activity where the official action has an economic impact of greater than a de minimis nature on the interest of any person.

---

5. Summary judgment is only appropriate when, after examining the record in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and the moving party clearly establishes that he is entitled to judgment as a matter of law. *Tomikel v. Department of Transportation*, 658 A.2d 861 (Pa. Cmwlth.1995). Summary judgment may be entered only in those cases in which the right is clear and free from doubt. *Ducjai v. Dennis*, 540 Pa. 103, 656 A.2d 102 (1995). It is an appropriate remedy in an action such as this where a party is seeking declaratory and injunctive relief. *Hospital Association of Pennsylvania, Inc. v. Foster*, 157 Pa.Cmwlth. 363, 629 A.2d 1055 (1993).

**"Public official."** Any person elected by the public or elected or appointed by a governmental body ...

These definitions include any person, whether or not that person is an attorney, who is employed with responsibilities affecting official action, or is elected or appointed by a governmental body, like the City. This is the reading of the definitions applied by the Supreme Court in *Ballou v. State Ethics Commission*, 496 Pa. 127, 436 A.2d 186 (1981) and *Maunus v. State Ethics Commission*, 518 Pa. 592, 544 A.2d 1324 (1988), where attorneys who were either retained or employed by government parties challenged the applicability of Section 4 of the Ethics Act.

In *Ballou*, a private practitioner who had among his clients townships, a borough, a county coroner and an industrial development authority contested the applicability of the financial disclosure requirements. The Supreme Court held that just because he happened to have governmental clients, among others, did not give the Commission jurisdiction to require filing of disclosure forms. The Supreme Court described his position as a consultant, because under the statutory language governing the duties of township and borough solicitors, he functioned as an advisor, performing professional services for a fee. The Supreme Court also stated that compensation from public funds is not synonymous with employment.

In *Maunus,* the Supreme Court addressed for the first time whether salaried attorneys employed by the government, in that case, Liquor Control Board attorneys, are subject to the provisions of the Ethics Act. The Court set forth the boundaries between where it had exclusive jurisdiction and where the governmental units as the employer also had the ability to discipline attorney-employees. It stated:

[T]his Court is the only governmental body entitled to regulate and discipline the professional class of attorneys. No other component of our state government may impose duties applicable to every attorney admitted to practice in the Commonwealth, nor may another Commonwealth entity admit to practice or discipline an attorney. These prerogatives are within this Court's exclusive jurisdiction. *However, notwithstanding our substantial authority in this area, it is ludicrous to suggest that employers are constitutionally precluded from imposing ethical and professional requirements on their employees, some or all of whom may be attorneys. This is equally true where the employer is the Commonwealth or one of its subdivisions.*

Employers in the private sector may properly adopt professional and ethical standards and in pursuit thereof, may require certain conduct of its employees, including attorneys, without running afoul of this Court's supervisory authority over the bar of this Commonwealth. Any intrusion upon the power of this Court to prescribe general rules governing the practice, procedure and conduct of judicial proceedings is viewed with the greatest of skepticism. See *In re 42 Pa.C.S. Sec. 1703*, 482 Pa. 522, 394 A.2d 444 (1978). However, a lawyer who contracts his or her services to an employer is like any other employee subject to the terms and rules of that employment, provided that they are in no way inimical to the ethical standards prescribed by this Court. For example, in order to avoid the appearance of impropriety, a law firm specializing in securities law may find it prudent to require its employees, including the attorneys on its staff, to disclose their personal securities holdings on a periodic basis. Likewise, public employers may find it appropriate to prohibit certain conduct or to eliminate conflicts of interest or such an appearance by requiring government employees to provide a financial disclosure statement on an annual basis. Such a requirement is to be distinguished from a legislative effort to prescribe rules of disclosure for members of the judiciary. See *In re 42 Pa.C.S. Sec. 1703, supra.* Members of the judiciary are not lawyers acting on behalf of private employers. They are constitutional officers subject to the mandate of Article 5 and the rules prescribed pursuant thereto under section 10 of that Article. *Even though instant appellees are governmental employees, they are nonetheless subject to the reasonable regulation of their governmental em-*

*ployer as long as it does not conflict with the authority of this Court.*

\* \* \* \*

We perceive no basis upon which to conclude that appellees, as employees of a state agency, are entitled to an exemption from the disclosure requirements simply because they are attorneys. Nonetheless, appellees urge that *Ballou v. State Ethics Commission,* 56 Pa.Cmwlth. Ct. 240, 424 A.2d 983 (1981), aff'd. on other grounds, 496 Pa. 127, 436 A.2d 186 (1981), provides the reasoning to compel such a result. While we appreciate the extent to which appellees have attempted to zealously safeguard our supervisory authority over members of the bar of this Commonwealth, this matter *is not within the category of cases which have presented the factual predicate for concluding that our jurisdiction over the courts of Pennsylvania and its officers has been unconstitutionally usurped by the legislature through the Ethics Act.*

518 Pa. at 596–600, 544 A.2d at 1326–28 (footnotes omitted, emphasis added).

Thus, in *P.J.S. I,* although denying the Ethics Commission's preliminary objections because there were unresolved factual issues concerning P.J.S.'s status with the City, we read *Ballou* and *Maunus* to require that attorneys who are salaried, full-time employees are covered by the Ethics Act:

> From these cases, it is settled law that if an attorney is a *salaried employee* of the governmental body, then he or she is governed by the provisions of the Act to the same extent as any other public employee. . . .

The *Maunus* court specifically declined to overrule *Ballou,* and instead distinguished its holding from that of *Ballou* on the basis that *Ballou* concerned a munici-

pal solicitor whose position was different from that of a salaried attorney employed by the government or a public agency. Thus, the Supreme Court stated:

> We upheld the Commonwealth Court's order exempting Mr. Ballou from complying with the disclosure requirements *on the narrow finding that a township solicitor is neither a "public employee" nor a "public official" within the scope of the Ethics Act.*

*P.J.S. I,* 669 A.2d at 1111 (emphasis in original, citations omitted).

In 1989, the General Assembly amended the Ethics Act, adding the following sentence to the end of Section 4(a):

> Persons who are full-time or part-time solicitors for political subdivisions are required to file under this section.

65 P.S. § 404(a).[6]

In the context of the holdings in *Ballou* and *Maunus,* the amendment to the financial disclosure section of the Ethics Act mandates that in addition to full-time solicitors who were already subject to the financial disclosure provisions as public employees under *Maunus,* part-time solicitors must also comply with the disclosure requirements.[7] Because neither the conflict of interest provision nor the definitions of public employee or public official in the Ethics Act were altered by the 1989 amendments, the additional coverage of part-time solicitors under the financial disclosure requirements of Section 4 of the Ethics Act, by the 1989 amendments, does not affect the inclusion of solicitors who are public employees or public officials in the other provisions of the Ethics Act, particularly Section 3.

Because the conflict of interest provisions of the Ethics Act apply to solicitors who are public employees and not just on retainer, it is necessary to address whether P.J.S. is a public employee. The settled facts are that P.J.S. was hired as a full-time solici-

---

6. Section 2 of the Ethics Act was also amended to include a definition of solicitor as a "person elected or appointed to the office of solicitor for the political subdivision". Nothing about this definition excludes solicitors from also being public employees or officials. To the contrary, it uses similar language as used in the definition of public official, that is, a person elected or appointed to an office.

7. Part-time solicitors who are specifically included in the provisions of Section 4 would not be required to comply with the conflict provisions contained in Section 3 unless they are public officials or public employees.

tor and placed on the payroll of the City, receiving all the incidents of employment as other employees. Just like the Commonwealth attorneys in *Maunus*, P.J.S.'s status with the City was as an employee rather than as a consultant on retainer or an independent contractor. The fact that he performed outside work, even if that work commanded more of his time or produced more income or that, as a practical matter, he considered his private law practice his primary employment, is insufficient to overcome his status as an employee. Also, it is established that in his employment as the solicitor, he was responsible for taking or recommending official action of a nonministerial nature. Accordingly, P.J.S. is a public employee who is covered by Section 3 of the Ethics Act. The Ethics Commission's motion for summary judgment is granted and the petition for review is dismissed.

## ORDER

AND NOW, this 3rd day of July, 1997, summary judgment is granted in favor of the Pennsylvania State Ethics Commission and the petition for review filed by P.J.S. is dismissed.

SMITH, J., dissents.